# In the United States Court of Federal Claims

No. 09-741 L

(Filed: September 20, 2011)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| FARMERS COOPERATIVE CO., et al., |  |
| Plaintiffs, | Rails-to-Trails; Reconsideration; Temporary Taking; Continuing STB Jurisdiction; Railroad's Failure to File Notice of Consummation of Abandonment |
| v. |  |
| THE UNITED STATES, |  |
| Defendant. |  |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER

In this "rails-to-trails" case, Plaintiffs have filed a motion for reconsideration and/or clarification of the court's June 24, 2011, opinion ("Pls.' Mot.") finding Defendant liable for a taking of Plaintiffs' property but only for the periods beginning with the issuance of the first NITU through the expiration of a series of NITUs regarding either of the two rail corridors at issue. Plaintiffs' motion also asks leave of the court for authorization to take discovery depositions of officials of the Surface Transportation Board ("STB") and of K&O Railroad ("K&O") and thereupon to supplement the record before the court in its determination of the duration of the Government's taking.

For the reasons stated below, Plaintiffs' motion is DENIED.

I.   Background

Plaintiffs apparently find themselves in an unusual and confused situation. They own property under or adjacent to either of two K&O rail line segments in Kansas, one running through Comanche, Kiowa, and Pratt counties in Kansas (the "CKP corridor") and the other running through Hodgeman county (the "Hodgeman corridor").[1] K&O held a right-of-way in the two corridors for railroad purposes.

In August 2003, K&O filed a Notice of Exemption with the STB proposing to abandon the two segments. In its notice, it advised that "[t]he property underlying the rights-of-way is reversionary, which would affect the transfer of the property for other than rail or rail-banking purposes." In November 2003, pursuant to the National Trails System Act, 16 U.S.C. § 1241 et

---

[1] For a more complete statement of facts, see *Farmers Coop. Co. v. United States*, 98 Fed. Cl. 797 (2011).

seq. (2006) ("the Trails Act"), the American Trails Association ("ATA") requested that a Notice of Interim Trail Use or Abandonment ("NITU") be issued to allow for the possibility of railbanking of the two rights-of-way.  K&O advised the STB of its willingness to negotiate with ATA for trail usage.  On November 25, 2003, the STB issued a NITU for both the CKP and Hodgeman corridors.

In April 2004, K&O conveyed its interest in the two corridors to ATA via a quitclaim deed.  The grant conveyed "all of Grantor's interests, in land and premises, right of way, bridges, culverts, easements, buildings, supporting structures, and other fixtures, improvements and appurtenances" in Comanche, Kiowa, Pratt, and Hodgeman counties.  Subsequent to the issuance of the November 2003 NITU but before the conveyance of K&O's interests via the quitclaim deed, K&O had removed the tracks, ties, and other components of the rail along the corridors.

The court found that K&O did in fact reach an agreement with ATA on interim trail usage.  By virtue of that agreement, the NITU "extend[ed] indefinitely."  *See Caldwell v. United States*, 391 F.3d 1226, 1230 (Fed. Cir. 2004).  Under trail agreements, the trail operator manages the corridor, assumes liability, and is responsible for taxes, freeing the railroad from those obligations.

Despite the quitclaim deed in favor of ATA and the de facto trail agreement between it and K&O, ATA never began usage of either corridor as a recreational trail, even though railroad usage had completely ceased and the rail tracks had been removed.  In October 2007, ATA filed with the STB a "Notice of Intent to Terminate Trail Use," asking to be relieved of its obligations over the two corridors.  The STB granted the request in November 2007, vacated the original NITU, and authorized K&O to fully abandon the line segments.  ATA even executed a "Disclaimer and Release" in January 2008 (recorded with the Pratt County Register of Deeds in February 2008), disclaiming any rights, title, or interest in the Pratt County portion of the CKP corridor.  The record does not reflect any similar action in the other counties of that corridor or in Hodgeman County.

The STB subsequently issued three further NITUs regarding the CKP or Hodgeman corridors.  In each of these instances, after the respective proposed trail operators indicated their interests in the corridors, K&O informed the STB that it had not "consummated" the abandonment of the lines and was willing to negotiate.  Because no trail use agreement was reached in any of these three negotiations, however, all three of these NITUs expired 180 days after their issuance.

Inexplicably, despite having removed the track and having quitclaimed its interest in the corridors to ATA, which in turn never initiated any trail usage and then subsequently sought and obtained from the STB the termination of its obligations, K&O has apparently failed to file any notice of consummation of abandonment of the lines.  Such notice is a necessary step under federal regulations to complete the process of abandonment and end STB jurisdiction over the lines.

Hence Plaintiffs' quandary:

> Here, the K&O has long since transferred all of its interest in the right-of-way to the vacated trail operator and it has cut-off its' [sic] legal and tax liabilities – gaining all the benefits of railbanking. Yet, for the lack of K&O's action in filing the Notice, the landowners' right-of-way remains in STB jurisdiction by operation of law to their material prejudice.

Pls.' Mot. at 18.

Plaintiffs argue, therefore, that without K&O action to consummate abandonment, the ongoing STB jurisdiction constitutes a permanent taking, rather than a temporary one.

II.   Standard of Review

Plaintiffs move for reconsideration pursuant to Rules 54(b) and 59(a)(1) of the Rules of the Court of Federal Claims ("RCFC"). These rules articulate the understanding that courts possess inherent authority to modify interlocutory orders prior to the entering of final judgment in a case. *See Wolfchild v. United States*, 68 Fed. Cl. 779, 784-85 (2005). The grounds for a court's exercise of its authority to reconsider, in departing from the law of the case, include the discovery of new or different material evidence not presented in the earlier decision, an intervening change in controlling legal authority, or when a prior decision is clearly incorrect and would work a manifest injustice. *Id*. at 785 (citing *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed. Cir. 2001)).

The standards for reconsideration of an interlocutory order under RCFC 54(b) and 59(a)(1) have been described as less rigorous than those, for example, applicable to final judgments under RCFC 59(e). *Id*. at 784. The standard under RCFC 54(b) has also been described even more flexibly as available "as justice requires." *See L-3 Communs. Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45, 48 (2011) (citing *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004). While the threshold for reconsideration under RCFC 54(b) is imprecise, it certainly "leaves within [its] ambit . . . a good deal of space for the Court's discretion." *Cobell*, 224 F.R.D. at 272. The district court in *Cobell* explained that "asking 'what justice requires' amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." *Id*.

Despite the flexible standards governing reconsideration herein and the discretion afforded the trial court, *see Alpha 1, L.P. ex rel. Sands v. United States*, 86 Fed. Cl. 568, 571 (2009), reconsideration is "not intended, however, to give an 'unhappy litigant an additional chance to sway' the court." *Matthews v. United States*, 73 Fed. Cl. 524, 525 (2006) (quoting *Froudi v. United States*, 22 Cl. Ct. 290, 300 (1991)). Nor is it availing, under the guise of reconsideration, to raise an issue for the first time that was available to be litigated earlier in the case. *Id*. at 526; *Gelco Builders and Burjay Const. Corp. v. United States*, 177 Ct. Cl. 1025, 1036-37 n. 7 (1966) ("Litigants should not, on a motion for reconsideration, be permitted to attempt an extensive re-trial based on evidence which was manifestly available at the time of the hearing.").

III.     Discussion

Plaintiffs first argue that the STB's jurisdiction over railroad abandonments was not fully explored in the earlier briefing on summary judgment, particularly with respect to its administrative regulations requiring a notice of consummation to be filed by the railroad in order to complete the abandonment process. "Plaintiffs submit that the interpretation of this regulation principally governs the issue of the duration of the taking in the case sub judice." Pls.' Mot. at 13.

The pertinent regulations provide that the NITU permits the railroad to fully abandon the line if no railbanking agreement is reached 180 days after the NITU is issued, 49 C.F.R. § 1152.29(d)(1); that a trail use request will be dismissed or denied if either abandonment has already been consummated by the time the request is received or if the railroad refuses to negotiate an agreement, 49 C.F.R. § 1152.29(e)(1); and that a railroad that has received authority from the STB to abandon must file a notice of consummation of abandonment "to signify that it has exercised the authority granted and fully abandoned the line (e.g., discontinued operations, salvaged the track, canceled tariffs, and intends that the property be removed from the interstate rail network)." 49 C.F.R. § 1152.29(e)(2). The latter regulation also provides that if a notice of consummation has not been filed within one year of the service date of the decision allowing abandonment, the authority to abandon automatically expires and a new proceeding would have to be instituted for authority to abandon. *Id*.

Here, K&O was given the authority to abandon the lines, did in fact remove the tracks, etc., but never filed the requisite notice of consummation of abandonment. Since more than one year has passed since it obtained authority to abandon, it would need to begin a new proceeding to obtain the necessary authority once again. It has not done so and on that basis STB jurisdiction over the two railroad corridors continues. Plaintiffs note that "without K&O's timely submission of the required Notice of Consummation to the STB, the agency's jurisdiction remains intact. The regulation contemplates that the railroad simply may not 'intend to consummate the abandonment,' after expiration of the NITU" and ask rhetorically, "What then?" Pls.' Mot. at 17.

Because of K&O's "inaction," Plaintiffs note that STB jurisdiction continues indefinitely. Plaintiffs equate the continuing STB jurisdiction with a permanent taking.

Correspondingly, Plaintiffs seek to depose the STB to develop more fully the agency's position on the issue of its continuing jurisdiction, specifically "whether the STB retains jurisdiction over a railbanked right-of-way which is vacated, but [where] the railroad does not file the Notice of Consummation contemplated by the regulation." *Id*. at 23. They seek to explore the same issue in a corporate deposition of K&O.

Plaintiffs complain of this court's "apparently erroneous ruling that STB jurisdiction terminated upon the expiration of the 180 day negotiating period in the last NITU issued on each line." *Id*. at 27. They seek clarification from the court "whether STB jurisdiction is in effect currently" because "[m]onetary damages" here "are not nearly as important" as determining "the status of the respective rights-of-way." *Id*. at 36.

In its decision, however, this court made no such ruling that STB jurisdiction terminated upon the expiration of the 180-day negotiating period between K&O and any of the prospective trail operators. To the contrary, the court observed that, "According to *federal* law, however, the right-of-way may not have been abandoned, because the railroad had not filed a notice of consummation of abandonment to finalize the process, as required under STB regulations, see 49 C.F.R. § 1152.29(e)." *Farmers*, 98 Fed. Cl. at 806 (emphasis added). The court also observed that "the three steps under Kansas law that constitute abandonment – intent, acts, and state or federal authorization to abandon – were all met." *Id*. n.9.

Defendant argues against reconsideration on two grounds: first, that Plaintiffs' motion raises no new facts or legal issues that were not before the court in the summary judgment proceeding; and, second, that further evidence regarding STB regulatory jurisdiction over the rail corridors is immaterial to the finding of the court on the duration of the taking. Defendant is correct in both respects.

The issues of the STB's jurisdiction over railroad abandonment, the procedures for issuance of the NITUs, the recognition that STB jurisdiction ceases once a rail line has been abandoned, and the obligation of the railroad to consummate the abandonment were raised and debated in the briefs and at oral argument. *See* Pls.' Mot. at 13. *Compare* Def.'s Cross-Mot. and Resp. to Mot. for Summ. J. at 3 ("If the STB grants the railroad authority to abandon, and the railroad 'consummates' the abandonment, the rail line is removed from the national transportation system and the STB's jurisdiction generally comes to an end."). Even the specific matter of a railroad's need to file a notice of consummation was raised in the Government's reply brief in support of its cross-motion for summary judgment, Def.'s Reply to Resp. to Cross-Mot. at 21 n.3, and at oral argument, Tr. 65:8-13, March 23, 2011. The requirement that the railroad would need to initiate a new abandonment request if its prior authorization to abandon had expired was also raised in oral argument by the Government. Tr. 66:13-22.

To that extent, Plaintiffs raise no new matters, much less mistakes, of fact or law or otherwise demonstrate any manifest injustice warranting reconsideration.

Moreover, as Defendant points out, Plaintiffs' concerns are "premised on a misunderstanding of the basis for the United States' potential liability in a rails-to-trails case." Def.'s Resp. to Mot. for Recons. at 8. In its decision, this court observed, "Because the STB's issuances of the NITUs were the 'only government action in the railbanking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right-of-way,' *Caldwell*, 391 F.3d at 1233-34, that is the extent of the Government's taking of Plaintiffs' property." *Farmers*, 98 Fed. Cl. at 808. Plaintiffs had conceded this point: "The railroad, in this case, the K&O, holds the key to completing the regulatory abandonment process." Pls.' Reply to Resp. to Mot. for Summ. J. at 16-17.

In a rails-to-trails takings case, the issue is not whether STB jurisdiction continues or whether the railroad retains a property interest upon the expiration of a NITU, but whether the Government has taken any action that forestalls the vesting of the underlying landowners' property rights. *See Barclay v. United States*, 443 F.3d 1368, 1373 (Fed. Cir. 2006) ("We

explained in *Caldwell* that '[t]he taking, if any, when a railroad right-of-way is converted to interim trail use under the Trails Act occurs when state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting.'"). With the expiration of all of the NITUs applicable to the two rail corridors, there is no longer any action by the United States to which Plaintiffs can point that impedes the realization of any property interests they would otherwise obtain under state law.

The Federal Circuit has noted that, "where no trail use agreement is reached, the taking may be temporary." *Ladd v. United States*, 630 F.3d 1015, 1025 (Fed. Cir. 2010). Here, the taking extended from the issuance of the first NITU in 2003 through the stewardship of the corridors under the aegis of ATA and continued beyond the vacation of that trail use agreement when the STB issued the various additional NITUs. Those NITUs, however, expired with no trail use agreements having been reached. As Defendant argues, "[b]ecause the NITUs at issue have all expired, there is no longer any government action on which Plaintiffs' cause of action can be sustained . . . ." Def.'s Resp. to Mot. for Recons. at 11.

It may be that Plaintiffs should undertake action in U.S. District Court under the Administrative Procedures Act, as suggested by Defendant, or in state court for a declaration that K&O has abandoned the corridors under state law, or otherwise convince K&O to take the necessary steps before the STB once again for authorization to abandon and then to file its notice of consummation officially. But, despite Plaintiffs' quandary, it is not this court's province to answer Plaintiffs' question, "What then?," or address how they might best extricate themselves from the consequences of the railroad's failure to file the requisite notice of consummation, even though its abandonment of the rights-of-way seems evident under state law.

This court determined that the United States is liable for a temporary taking of Plaintiffs' property. There are no valid grounds for reconsideration of that finding.

Plaintiffs' motion for reconsideration is denied.

                                                                s/ Edward J. Damich
                                                                 EDWARD J. DAMICH
                                                                 Judge